UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| GGNSC FRANKFORT, LLC, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> RANDELL MOORE, AS EXECUTOR OF ) <br> THE ESTATE OF MINNIE MOORE, ) <br> DECEASED, ) <br> ) <br> Defendant. ) <br> ) | Case No. 3:17-cv-00045-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

GGNSC Frankfort, LLC, a nursing home located in Frankfort, Kentucky, filed suit in this Court to compel arbitration of certain claims brought in Franklin Circuit Court by Defendant Randell Moore, executor of the Estate of Minnie Moore. Moore subsequently moved to dismiss the action. For the reasons that follow, Moore's motion to dismiss will be DENIED, and GGNSC's motion to compel arbitration will be GRANTED IN PART and DENIED IN PART. Only Moore's wrongful death claim will be allowed to proceed in state court.

**I**

Minnie Moore was admitted to Golden LivingCenter – Frankfort, a nursing home operated by GGNSC Frankfort, LLC, for a period of time in 2009 and again in 2014. Being of unsound mind and in need of assistance, Minnie Moore executed a durable Power of Attorney document entitled "Power of Attorney, General" in 2008, authorizing her son Randell Moore to act on her behalf in a variety of ways. [*See* R. 1-4.] Randell Moore, as Minnie's Power of

Attorney, signed the paperwork needed to admit Minnie to the Golden LivingCenter in both 2009 and 2014. Both times, the Golden LivingCenter admissions paperwork included an arbitration agreement. [R. 1-2; R. 1-3.]

The 2014 agreement, entitled "Alternative Dispute Resolution Agreement," is at issue in this case. The arbitration agreement notes at the very beginning that signing the agreement is not a condition of admission to the nursing home, and the agreement goes on to explain that any signatories are "selecting a method of resolving disputes without resorting to lawsuits or the courts, and that by entering into this agreement, they are giving up their constitutional right to have their disputes decided in a court of law . . . ." [R. 1-3 at 2.] The final page of the agreement presents two options: a place to sign to accept the arbitration agreement, or a place to sign if alternative dispute resolution is declined. [*Id.* at 8.] On August 8, 2014, Randell Moore, acting as Minnie Moore's general Power of Attorney, signed to accept the arbitration agreement. [*Id.*]

A number of years later, Randell Moore filed suit in Franklin Circuit Court against GGNSC, this time acting as the executor of Minnie Moore's estate. Moore's complaint sets forth claims for negligence, medical negligence, corporate negligence, and wrongful death, all stemming from Minnie Moore's alleged accelerated health deterioration and eventual death at Golden LivingCenter. [R. 1-1.] GGNSC subsequently filed a lawsuit in this Court, asking the Court to compel arbitration and enjoin the Franklin Circuit Court proceeding in light of the 2014 arbitration agreement entered into by Moore. [R. 1; R. 2.] Moore responded to GGNSC's motion to compel arbitration with a motion to dismiss. [R. 7.] The Court now considers both parties' arguments.

## II

### A

As a preliminary matter, the Court must resolve a number of jurisdictional issues set forth in Moore's motion to dismiss. *See, e.g.*, *Douglas v. E.G. Baldwin & Associates*, 150 F.3d 604, 607 (6th Cir. 1998) ("The first and fundamental question presented by every case brought to the federal court is whether it has jurisdiction to hear a case."). Moore claims the Court does not have adequate diversity jurisdiction over this dispute because certain parties in the underlying state court case are Kentucky citizens. [R. 8 at 4.] Moore argues GGNSC failed to join a number of necessary and indispensable parties to this federal action under Federal Rule of Civil Procedure 19. [*Id.* at 4-5.] And Moore also contends that, even if the Court does have sufficient diversity jurisdiction, it should abstain in this case pursuant to the *Colorado River* doctrine. [*Id.* at 5-6.] All of these arguments have been rejected by other Eastern District of Kentucky courts, and the arguments are similarly meritless in this case.

First, the Court has adequate subject-matter jurisdiction over the matter. The Federal Arbitration Act ("FAA") does not provide an independent basis for federal jurisdiction. 9 U.S.C. § 4; *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009). Instead, petitioners seeking to compel arbitration under the FAA must assert an independent source of subject matter jurisdiction. GGNSC has invoked the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, maintaining all of the plaintiffs are citizens of states besides Kentucky, the defendant is a citizen of Kentucky, and the amount in controversy exceeds $75,000. [R. 1.] While complete diversity of citizenship exists on the face of GGNSC's federal complaint, Moore contends the action is actually non-diverse, because named defendants in the state court action are Kentucky citizens. But this argument, which asks the Court to "look through" the federal action to the underlying state

complaint, has been consistently rejected by the judiciary. *See, e.g., GGNSC Stanford, LLC v. Gilliam*, 205 F. Supp. 3d 884, 888 (E.D. Ky. 2016) (compiling cases); *see also Preferred Care, Inc. v. Howell*, 187 F. Supp. 3d 796, 803-04 (E.D. Ky. 2016). The action is clearly sufficiently diverse under § 1332.

As for Moore's assertion that the state court, non-corporate defendants from Kentucky are necessary and indispensable parties, a number of federal courts have already explained why that is not the case. Because the non-corporate defendants would destroy diversity, the Court looks to Federal Rule of Civil Procedure 19(b), which requires it to consider whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). To make this determination, the Court considers:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> > (A) protective provisions in the judgment;
> >
> > (B) shaping the relief; or
> >
> > (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*

Moore does not articulate why the Rule 19 factors require the action to be dismissed beyond alluding to the notion that only "incomplete justice" would be served in the absence of the non-corporate defendants. [*See* R. 8 at 4.] In light of Moore's complete lack of argumentation, the Court, like others, finds yjsy Rule 19 does not require dismissal of the action.

4

Sixth Circuit law makes clear that joint tortfeasors are not indispensable parties to an action to compel arbitration under the FAA, even if those parties were joined at the state level. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001); *see also Howell*, 187 F. Supp. 3d at 204-05 (analyzing *PaineWebber*). Any risk of piecemeal litigation or "incomplete justice" suffered by Moore here is, in reality, "a result of [Moore's] decision to file suit in state court rather than demanding arbitration under the Agreement." *Gilliam*, 205 F. Supp. 3d at 889. Rule 19 does not provide Moore with a basis for relief.

In addition, Moore argues that even if this Court does enjoy diversity jurisdiction, it should abstain from that jurisdiction pursuant to the *Colorado River* doctrine. *See Colorado River Water Conservation District, et al. v. United States*, 424 U.S. 800 (1976). Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Id.* at 818. Nevertheless, in *Colorado River*, the Supreme Court held that federal courts may refuse to exercise jurisdiction in favor of a parallel state court action, so long as certain "exceptional circumstances" are present. *Id.*; *see also PaineWebber*, 276 F.3d at 206. In light of *Colorado River* and its progeny, the Sixth Circuit has articulated eight factors for courts to consider when deciding whether to abstain from exercising jurisdiction due to the concurrent jurisdiction of a state court. These factors are: (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *See PaineWebber*, 276 F.3d at 206.

In this case, most factors weigh against abstention. The first and second factors weigh against abstention because the record does not suggest the state court has assumed jurisdiction over any res, and the federal forum is equally as convenient for the parties—indeed, the two forums are but two city blocks away from one another. The third factor weighs against abstention, because while the avoidance of piecemeal litigation is ordinarily a legitimate concern under the *Colorado River* doctrine, "the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983) (emphasis in original); *see also PaineWebber*, 276 F.3d at 207 (explaining that "the desire to avoid litigating a single issue in multiple forums is insufficient to overcome the strong federal policy supporting arbitration"). And the fifth factor, which concerns the source of the governing law, also weighs against abstention, because the FAA, a federal law, is the basis of interpreting the arbitration agreement. *See PaineWebber*, 276 F.3d at 208-09. "[T]he presence of federal law issues must always be a major consideration weighing against surrender of federal jurisdiction in deference to state proceedings." *Howell*, 187 F. Supp. 3d at 806; *Gilliam* 205 F. Supp. 3d at 891.

The fourth factor and seventh factors are neutral at best. While the action was initially filed in Franklin Circuit Court and that action has technically proceeded further than the present one [*see* R. 2-2 (indicating at least a first set of interrogatories and requests for production of documents have been propounded by Moore)], neither the state case nor the federal one have progressed significantly. *See Howell*, 187 F. Supp. 3d at 806.

Finally, the sixth factor and the eighth factor somewhat favor abstention. There is no reason to believe that the state forum will not adequately protect GGNSC's rights, particularly because the FAA is binding on state courts. *PaineWebber*, 276 F.3d at 208; *see also Kindred*

*Nursing Centers L.P. v. Clark*, \_\_\_ U.S. \_\_\_, 137 S. Ct. 1421 (2017) (clarifying how Kentucky state courts should interpret the FAA). And while federal courts are more likely to abstain under *Colorado River* where concurrent jurisdiction exists, the Sixth Circuit has also clarified that concurrent jurisdiction is "insufficient to justify abstention . . . where a congressional act provides the governing law and expresses a preference for federal litigation." *PaineWebber*, 276 F.3d at 208. The FAA expresses this type of preference. *See Howell*, 187 F. Supp. 3d at 807 (citing *Moses H. Cone*, 460 U.S. at 255 n. 32). Thus, to the extent the eighth factor weighs in favor of abstention, it does so only slightly.

In sum, the *Colorado River* doctrine neither counsels nor requires abstention in this case. While some factors may slightly favor abstaining, this case is not the rare one where there are "exceptional circumstances" and "the clearest of justifications" to support surrendering federal jurisdiction. *Moses H. Cone*, 460 U.S. at 25-26. *See also Howell*, 187 F. Supp. 3d at 805-07 (declining to abstain under *Colorado River* in an analogous case); *Gilliam*, 205 F. Supp. 3d at 890-91 (same); *Lowry*, 213 F. Supp. 3d at 865-67 (same).

**B**

Jurisdictional issues resolved, the Court turns to Moore's legal arguments in support of dismissal. Moore argues that the arbitration agreement in question is not enforceable under the FAA; that the Power of Attorney provided insufficient authority for Moore to enter into a binding arbitration agreement; and that the arbitration agreement is unconscionable. Just like the jurisdictional issues, all of Moore's arguments in favor of dismissal have previously been found unavailing by other courts. The arguments are similarly unavailing here.

To the extent Moore maintains the FAA does not apply to the arbitration agreement because the agreement does not relate to a transaction involving interstate commerce [*see* R. 8 at

7

7], this contention has been flatly rejected. The FAA indisputably applies to arbitration agreements executed in connection with nursing home admission. *See, e.g.*, *Diversicare of Nicholasville, LLC v. Lowry*, 213 F. Supp. 3d 859, 867-78 (E.D. Ky. 2016); *Howell*, 187 F. Supp. 3d at 809-10; *Gilliam*, 205 F. Supp. 3d at 894. Moore offers no explanation for why the Court should depart from seemingly clear precedent on this point, and the Court thus deems the arbitration agreement in question sufficiently covered by the FAA.

Moore next contends the written Power of Attorney designating him as Minnie Moore's attorney in fact encompasses insufficient authority for the execution of the arbitration agreement in question. [R. 8 at 7.] But this is baseless in light of the language contained in the Power of Attorney document and prior case law. The Power of Attorney gives Randell Moore the authority to "manage and conduct all of [Minnie Moore's] affairs and to exercise all of [her] legal rights and powers, including all rights and powers that [she] may acquire in the future." [R. 1-4 at 2.] The Power of Attorney also gives Moore the authority to "enter into binding contracts" on Minnie Moore's behalf and to "take any and all legal steps necessary to collect any amount or debt owed . . . or to settle any claim . . . whether made against [Ms. Moore] or asserted on [her] behalf against any other person or entity." [*Id.*] Federal courts in Kentucky routinely find that this kind of Power of Attorney language sufficiently encompasses the signing of binding arbitration agreements. *See Gilliam*, 205 F. Supp. 3d at 892 (noting the authority to "make and sign any and all contracts" encompasses arbitration agreements); *Lowry*, 213 F. Supp. 3d at 869 (explaining the authority to "enter into binding contracts" on someone's behalf includes the authority to enter into an arbitration agreement).

Moreover, the arbitration agreement entered into by Moore is not unenforceable as unconscionable. Moore complains the agreement was "part of a mass-produced, boiler-plate,

pre-printed document, likely presented to the Defendant within a lengthy stack of admissions paperwork." [R. 8 at 9.] This might be true, but it ultimately proves immaterial. Kentucky courts consider the doctrine of unconscionability to be a narrow exception to the rule that duly executed written agreements, absent fraud, are enforced according to their terms. *See Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001). Unconscionability arguments are best "directed against one-sided, oppressive, and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain." *Id.* Moore cannot succeed on an unconscionability argument by merely complaining the document was pre-printed and, as such, purportedly confusing. Moore must instead demonstrate that the agreement was "one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Id.* (internal quotation marks omitted); *see also Howell*, 187 F. Supp. 3d at 810. Moore has not carried this burden, and his unconscionability argument fails.

## C

In the end, not a single argument presented by Moore in support of his motion to dismiss succeeds, and the motion to dismiss must be denied. As a result, the Court considers the motion to compel arbitration filed by GGNSC. When analyzing a motion to compel, the Court considers four issues: (1) whether the parties agreed to arbitrate; (2) the scope of the arbitration agreement at issue; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, of the claims are subject to arbitration, whether to stay the remainder of the proceedings pending arbitration. *See, e.g.*, *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Only two of the four factors are at issue in Moore's case. The Court's discussion above regarding Moore's motion to dismiss demonstrates that the parties did, indeed,

agree to enter a binding arbitration agreement. And the third factor regarding federal statutory claims is irrelevant, because Moore asserts no such claims. [*See* R. 1-1.] The Court, then, considers the scope of the arbitration agreement and whether any nonarbitrable claims should be stayed pending arbitration.

GGNSC has asked the Court to stay the action in Franklin Circuit Court in its entirety pending arbitration of Moore's claims and to enjoin Moore from pursuing any further claims in the state action. [*See* R. 2-1 at 1-2, 12 n. 4 (contending the arbitration agreement, "by its very language, plainly encompasses all of Respondent's claims in the State Court Action").] Despite GGNSC's confidence that all of Moore's claims fall within the scope of the arbitration agreement, the Court finds this is not entirely the case.

Moore's complaint states claims both "on behalf of Minnie Moore, deceased," and "on behalf of the Estate of Minnie Moore." [R. 1-1 at 4.] While the arbitration agreement encompasses the claims brought on behalf of Minnie Moore herself, the agreement does not encompass claims brought by a party besides Minnie Moore—in this case, the Estate.

The arbitration agreement itself defines covered legal disputes as follows:

> This Agreement applies to any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility or the Admissions Agreement between the Parties that would constitute a legally cognizable cause of action in a court of law sitting in the state where Facility is located. Covered Disputes include but are not limited to all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of a right claimed to exist under federal, state, or local law or contractual agreement between the Parties; tort; breach of contract; consumer protection; fraud; misrepresentation; negligence; gross negligence; malpractice; and any alleged departure from any applicable federal state, or local medical, health care, consumer, or safety standards.

[R. 1-3 at 4.] This language clearly applies to the tort claims brought on behalf of Minnie Moore herself under KRS §§ 216.515 and 216.520 for negligence, medical negligence, and corporate negligence. [*See* R. 1-1.]

But Moore's complaint also states a wrongful death claim. [*Id.* at 25.] Under Kentucky law, "[w]henever the death of a person results from an injury inflicted by the negligence or wrongful act of another," a representative of the decedent can bring a claim to recover damages against the person or agent who caused the death. *See* KRS § 411.130(1). A wrongful death claim "is not derived through or on behalf of the resident, but accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss." *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 597-99 (Ky. 2012). In other words, a wrongful death claim is one brought not on behalf of Minnie Moore herself, but on behalf of her Estate.[1]

The only parties to the arbitration agreement in this case are GGNSC and Minnie Moore, because Randell Moore was signing only on Minnie's behalf as her Power of Attorney and not on behalf of her future Estate. *See Richmond Health Facilities v. Nichols*, 811 F.3d 192, 197 (6th Cir. 2016). "[A] decedent (or a representative thereof) has no authority to bind wrongful death beneficiaries to an arbitration agreement." *Lowry*, 213 F. Supp. 3d at 869; *see also Howell*, 187 F. Supp. 3d at 808. Accordingly, the binding arbitration agreement does not encompass the wrongful death claim.

As for the state court claims that fall within the scope of the arbitration agreement, the Court will enjoin Moore from further litigating those claims in Franklin Circuit Court. *See Great*

---

[1] For a detailed explanation of why *Ping* is not preempted by the FAA, see *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 197-203 (6th Cir. 2016), and Judge Thapar's discussion in *Howell*, 187 F. Supp. 3d at 808.

*Earth Co., Inc. v. Simons*, 288 F.3d 878, 893-94 (6th Cir. 2002) (explaining the Court's authority to do so pursuant to the Anti-Injunction act, 28 U.S.C. § 2283); *see also Gilliam*, 205 F. Supp. 3d at 895. But as for the wrongful death claim, the Court will deny the motion to compel and allow Moore to proceed with that claim in Franklin Circuit Court. To the extent either party wishes to stay litigation of the wrongful death claim pending the arbitration of the other issues, *see Stout*, 228 F.3d at 714, the parties may request such relief at the state court level. While the Court will exercise its authority under the Anti-Injunction Act to enjoin Moore from pursuing most of his claims, the Court will not opine at this juncture on whether the wrongful death claim should be stayed in state court, particularly when neither party has weighed in on the issue.

### III

In conclusion, Moore's motion to dismiss sets forth no legal or equitable basis for relief. GGNSC's motion to compel arbitration, however, is properly granted to the extent the agreement actually encompasses the claims set forth in Moore's Franklin Circuit Court complaint. Accordingly, the Court hereby **ORDERS** as follows:

1. Defendant Randell Moore's Motion to Dismiss [R. 7] is **DENIED**;

2. Petitioner GGNSC's Motion to Compel Arbitration [R. 2] is **GRANTED IN PART** and **DENIED IN PART**. The Motion to Compel is denied as to the wrongful death claim asserted by Moore in the underlying state court complaint, but the Motion to Compel is granted in all other respects;

3. Randell Moore, acting as Executor for the Estate of Minnie Moore, is **ENJOINED** from pursuing his Franklin Circuit Court claims for negligence, medical negligence, and corporate negligence pursuant to KRS § 216.515, KRS § 216.520, and common law; and

4. This action is **STRICKEN** from the Court's active docket.

This the 28th day of June, 2017.

Gregory F. Van Tatenhove
United States District Judge